## BALTIMORE & O. R. CO. v. CAMP.

(Circuit Court of Appeals, Sixth Circuit. December 4, 1900.)

No. 829.

1. PLEADING—VARIANCE—NEW MATTER OF DEFENSE.

Under the provision of Rev. St. Ohio, § 5070, that the answer shall contain "a statement of any new matter constituting a defense," a railroad company sued for damages for a personal injury to an employé cannot prove in bar of the action a contract by which plaintiff was required to elect whether he would receive indemnity for his injuries from a fund created for that purpose or proceed against the company for damages, and that he elected to take benefits from the fund, and in fact received payments therefrom, where such defense is not pleaded, and on objection by plaintiff to the evidence there is no offer to amend.

2. MASTER AND SERVANT—ACTION FOR PERSONAL INJURY—QUESTIONS OF FACT.

Whether the engineer of a freight train complied with a rule of the company requiring him to apply for and to get orders or a clearance card before leaving a particular station, where he applied for and received orders three-quarters of an hour before leaving the station, and acted upon such orders without making further application, is a question of fact depending upon the circumstances of the particular case, and he cannot be said to have been guilty of a violation of such rule as a matter of law.

3. SAME—INSTRUCTIONS.

In an action by the engineer of a train against the railroad company to recover damages for an injury received in a collision alleged to have been due to the negligence of the train dispatcher, an instruction was properly refused which not only took from the jury the question of whether plaintiff was guilty of a violation of the rules, which was one of fact, but which further authorized a verdict for defendant upon a finding that the conductor had violated the rules, although the jury might further find that the negligence of the train dispatcher, either independently or concurrently with that of the conductor, was the proximate cause of the injury.

In Error to the Circuit Court of the United States for the Southern District of Ohio.

J. H. Collins, for plaintiff in error.
S. M. Hunter, for defendant in error.

Before LURTON and SEVERENS, Circuit Judges, and EVANS, District Judge.

EVANS, District Judge. This case has heretofore been twice before this court. The facts out of which the action arose have been fully stated in previous opinions, reported, the first, in 13 C. C. A. 233, 65 Fed. 952, 31 U. S. App. 213, and the second in 26 C. C. A. 626,

81 Fed. 807, 54 U. S. App. 110. After a third trial, which also result-ed in a verdict and judgment for the plaintiff, the railroad company has again brought the case here, and has made various assignments of error. Some of these raise the question of whether there was evi-dence sufficient to authorize the submission of the case to the jury at all; others, the question of whether the pleadings should have been amended; and others, whether the court below should have granted a new trial,—but these (especially in view of our previous decisions) are so obviously insufficient to warrant a reversal that we need not further allude to them. Indeed, among the specifications of error there appear to be only three which seem to require any detailed treat-ment.

1. The court below refused to permit the plaintiff in error to prove that at the time of the injury to Camp there was an existing contract between him and the railroad company, whereby, upon cer-tain payments of dues, an indemnity fund had been created for the employés of the railroad company, out of which, in case of injury, Camp, as an employé, might, at his option, elect either to take in-demnity for his injuries out of this fund, or else to claim it from the company itself, but which did not permit him to do both; and the court further refused to permit the introduction of evidence tending to show that after the injury, and before the action was brought, Camp had elected to take, and had in fact received, payment of cer-tain installments, pursuant to the contract, out of this indemnity fund; and which facts, it is contended, the court should have permit-ted the railroad company to prove in bar of Camp's right to recover in this suit. The plaintiff below objected to the introduction of this testimony, and each part of it; and to the refusal of the court to per-mit it to go to the jury the railroad company excepted, and this rul-ing of the court is the basis of the second error assigned.

Section 5070 of the Revised Statutes of Ohio provides:

"The answer shall contain: 1. A general or specific denial of each material allegation of the petition controverted by the defendant. 2. A statement of any new matter constituting a defense, counterclaim or set-off, in ordinary and concise language."

An examination of the pleadings in the case will show that there was no averment in the answer of any new matter constituting a de-fense to which the proposed evidence was in any way applicable. There was, therefore, no issue upon the subject, and no averment in the answer to which the proposed evidence would be relevant, and the court cannot doubt that its rejection by the trial court was en-tirely proper. Whatever degree of liberality may have been reached in the practice in Ohio, the plaintiff was still entitled to insist upon his rights under the section of the statute just copied, that any new matter constituting a defense should be stated in the answer, to the end that he might have notice of it in time to meet it. The testimony having been objected to when offered, the general rule still is that there must be allegation as well as proof; and, there being no allega-tion in this case, and no offer to amend the pleading, the proof offered was not pertinent. We are of opinion, therefore, that this assign-ment of error is not well taken.

2. The eighth specification of error, No. 3, is based upon the refusal of the court to charge the jury as follows:

"The rules of the company introduced in evidence provide: 'All conductors and enginemen must go to telegraph offices at Bellaire, Zanesville, Newark, Chicago Junction, Sandusky, and Shawnee, and ask for orders, before leaving these stations. The application for orders, as above, will be made by the use of "Blank A." Conductors and enginemen must get orders or clearance card. "Blank B," before leaving above stations.' If the plaintiff and the conductor of the train which they were running did not comply with the conditions of this rule, and started their train east in disregard of the same, when the compliance with its terms would have enabled the train dispatcher to have given the order to the plaintiff and the conductor at Newark, instead of Black Hand, then, and in that case, the plaintiff has no right to complain, because the passing and hold orders were sent to Black Hand instead of Newark. Going to the office three-quarters of an hour before leaving, and not afterwards, would not be a compliance with this rule."

The rules of the railroad company, as disclosed by the testimony of defendant, provide as stated in the proposed instruction; but the proof was very clear that Camp did, at 10 o'clock and 4 minutes a. m., at Newark, ask for and get "orders," though not a formal "clearance card." The rule, however, as appears upon its face, did not require that both should be obtained. The orders were that the train of which Camp was the engineer should proceed east from Newark, and this involved the passing of express passenger train No. 47 between Newark and Black Hand. This train was, as his other orders showed, running 3 hours and 10 minutes late, and the only passing place was Clay Lick, where his orders also required him to pass a freight train, which of itself would take about 15 minutes. These orders were received at a time which, when construed in connection with the standing rule of the company, which required a freight train, such as Camp's, to reach a meeting station and get on a side track at least 10 minutes before the time for the arrival of the passenger train, made it necessary, as the time was too short, in his judgment, to reach Clay Lick soon enough to obey this rule, that Camp's train should not start until after the passenger train had not only reached Clay Lick, but had come into Newark, a distance of about six miles. But, notwithstanding these facts, the court was asked, in the proposed instruction, to charge the jury conclusively, and as matter of law, "that going to the office three-quarters of an hour before leaving, and not afterwards, would not be a compliance with this rule." To this we cannot agree. Nor can we agree to the contention that it was essential to have a "clearance card" as well as "orders." Whether an instruction upon this subject, properly phrased, might not have been well given to the jury in such manner as to leave the question of fact to them to say whether Camp, in what he did, was obeying the orders and rules binding upon him in the then present conditions and emergency, might be an interesting question if presented; but it is not presented, and in the form proposed by the railroad company the instruction was not sound, and should not have been given, because it told the jury absolutely, and without qualification or condition, although he then got his orders, that Camp's going to the office three-quarters of an hour before leaving, and not afterwards, would not be a compliance with the rule. That conclusion might depend, and did.

depend, upon the circumstances as the jury might find them to exist. An instruction proposed by a party must be correct in every substantial and important particular before it is error to refuse it as a whole. We think this assignment is not well taken.

3. The thirteenth specification under assignment of error No. 3 is in this language:

"The following is rule 530, introduced in evidence in this case: 'Conductors and enginemen are positively prohibited from going to meals, or delaying their trains for any purpose after receiving orders which allow them to proceed, without asking for and obtaining express permission to do so from the superintendent. When such permission is received, the conductor must report when he is ready to go, and ask if any further orders.' It appears from the evidence in this case that this rule was not complied with by Camp and the conductor of the train which he was running, and, if they left East Newark in violation of this rule, Camp has no right to complain, because he did not receive his orders at the East Newark office."

This request to charge, when critically considered with reference to the rule of the company which is embodied in it, not only took from the jury the right to determine whether the rule had been complied with or not, but would clearly leave it to the jury to say that, if the conductor failed at East Newark to report when he was ready to go, and to ask if there were further orders, Camp, the engineer of the train, could not recover, notwithstanding the jury might find that, entirely independently of this collateral act of another, to wit, the conductor, the train dispatcher, acting as the company itself, had been guilty of that negligence respecting orders and proceedings for safety at Black Hand, which had in fact, and independently of all other causes, brought about the injury to Camp. This would leave Camp without the right to recover if the conductor had failed to inquire for orders, notwithstanding it might be the fact that this failure of the conductor had no sort of contributory relation to the subsequent neglect of the company itself, which brought about the disaster. The record leaves no doubt that there was evidence tending to show that the proximate cause of the collision at Black Hand, in which Camp was injured, was the neglect of the train dispatcher at Newark to see that the precautions which the rules of the company required had been taken at Black Hand to notify Camp's train of the orders for holding it there, which had been issued about the time his train had left Newark, and of which he had no notice. It was manifestly the duty of this officer, the train dispatcher, who was not a fellow servant of Camp, to see that the necessary orders were enforced for the purpose of notifying Camp of the new and extremely important condition of things. The train dispatcher was required by the rules to see that the telegraph operator at Black Hand so responded to his orders as to show him that all signals were out, and that torpedoes had been put on both rails at Black Hand. Nothing of the sort was done. Camp's train was not stopped, nor notified there of the orders; and the jury doubtless concluded that this particular neglect of the train dispatcher was the cause of the injury. It is insisted, however, that, if Camp had gone again for orders before leaving Newark or East Newark, he might possibly have heard of them, and the injury might have been avoided; and that his neglect

in this regard contributed to the injury. But, if we assume that rule 530 applied to Camp so as to make it his duty to report to the train dispatcher, and ask for further orders, still the question as to whether his failure to do so proximately contributed to the subsequent collision would have presented a question for the jury under the circumstances of this case, and it would have been error to assume as matter of law that such alleged negligence did so contribute. The jury might have found that it was the duty of the train dispatcher to give notice of the meeting point whether or not Camp or the conductor had again asked for orders, and that it was all the more imperiously essential as he knew that Camp was without information of the orders, and at the greatest hazard, unless notified. The orders for Black Hand were probably given after Camp's train had left Newark, and certainly without his knowledge. He had no information of this new situation, although upon knowledge of it might depend his safety or his life. There was nothing in the plaintiff's own testimony which so certainly established contributory negligence upon his part as to make it proper in any jurisdiction, much less in this, to direct a verdict against him; and, dealing with the exact questions raised by this assignment of error, we hold that it was not improper to refuse to charge the jury in the language proposed by counsel for the railroad company. It did not accurately state the law applicable to the case, whether the plea of contributory negligence has or has not been made by the pleadings. This is all the more clearly and emphatically true inasmuch as the rule on its face required the conductor alone, and not the engineer, to ask for further orders when ready to leave; and at most, if the conductor's negligence in not doing so contributed to Camp's injury, it was a case of the negligence of a fellow servant concurring with that of the master, and will not relieve the latter from liability. Railway Co. v. Cummings, 106 U. S. 700, 1 Sup. Ct. 493, 27 L. Ed. 266; 1 Shear. & R. Neg. § 188. There was no error in refusing this request to instruct the jury.

4. The able and perspicuous charge of the learned judge at the trial seems to the court to have left no doubt upon the minds of the jury as to the issue they were to try. It is manifest that in the clearest possible way, and with all proper limitations, the jury were told that, if the collision was the result of negligence upon the part of the telegraph operator at Black Hand, the plaintiff could not recover, because he was a fellow servant; but that, if the cause of the injury was the neglect of the train dispatcher in the respects to which we have alluded, then that Camp would have the right to recover, because the negligence of the train dispatcher was the negligence of the company itself. They were distinctly told that in the one case Camp might recover, but that in the other he could not. At all events, the issue which the jury was to try was clearly and intelligently presented.

We have carefully examined, not only the charge itself, but the propositions to charge offered by the counsel for the railroad company, and, in our opinion, the charge itself contains no error. It is also our opinion that the propositions offered by the defendant, so far as they were correct, were embraced in the charge of the court,

and that, so far as they were refused by the court, they were not correct statements of the law applicable to the case. It results from these views that the judgment of the court below should be, and it is, affirmed.